FILED - GR
December 14, 2010 2:40 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mrs / SCANNED BY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Matthew Penning,** | ) | |
| Plaintiff, | ) | **1:10-cv-1237** |
| | ) Hon. | |
| v. | ) | **Janet T. Neff** |
| | ) | **U.S. District Judge** |
| **Portfolio Recovery Associates,** | ) | |
| **L.L.C.,** a Delaware limited liability company, | ) | |
| Defendant. | ) | |

## I. Introduction

1. This is an action for damages brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC"), M.C.L § 339.901 *et seq.*

## II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

## III. Parties

3. Plaintiff Matthew Penning is a natural person residing in Kent County, Michigan. Mr. Penning is a "consumer" and "person" as the terms are defined and/or used in the FDCPA.

1

Mr. Penning is a "consumer," "debtor" and "person" as the terms are defined and/or used in the MOC.

4.  Defendant Portfolio Recovery Associates, L.L.C. ("PRA") is a Delaware limited liability company, with its principal place of business located at 120 Corporate Boulevard, Suite 100, Norfolk, Virginia 23502. The registered agent for PRA is Judith S. Scott, 120 Corporate Boulevard, Suite 100, Norfolk, Virginia 23502. PRA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PRA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PRA is a "debt collector" as the term is defined and/or used in the FDCPA. PRA is a "regulated person" as the term is defined and/or used in the MCPA. PRA is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

### IV. Facts

5.  Mr. Penning had a credit account (No. 5178052627540285) with Capital One Bank (USA), N.A. ("Capone") which he used to obtain goods and/or services for personal, family or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA, MCPA and MOC.

6.  Mr. Penning had a disagreement with Capone regarding the amount of the alleged debt, including a dispute regarding alleged late charges, exorbitant interest rates, and other excessive charges to the account. Mr. Penning disputed and refused to pay the alleged debt.

7.  Apparently, Capone charged off and sold the alleged debt.

8.  PRA is in the business of purchasing delinquent consumer debt, typically paying somewhere between five and ten cents on the dollar.

9. PRA claims to have purchased the alleged debt after the account allegedly became delinquent.

10. PRA hired a debt collection law firm named Mary Jane M. Elliott P.C. ("Elliott") to collect the alleged debt from Mr. Penning.

11. Elliott is a "debt collector" as the term is defined and/or used in the FDCPA.

12. Mr. Penning disputes the alleged debt.

13. Mr. Penning refuses to pay the alleged debt.

14. On June 22, 2010, Mr. Penning received from Elliott, a letter in which Elliott demanded payment of the alleged debt.

15. On July 21, 2010, Mr. Penning telephoned PRA regarding the alleged debt. PRA refused to speak with Mr. Penning regarding the alleged debt and instructed Mr. Penning to telephone Elliott regarding the matter.

16. On July 21, 2010, Mr. Penning telephoned Elliott and spoke with a female Elliott employee. The Elliott employee stated that Elliott had been hired by PRA to collect the alleged debt. The Elliott employee stated that the current account balance was $1,111.55. The Elliott employee stated that Elliott was willing to settle the account for $835.00. The Elliott employee stated that Elliott would sue Mr. Penning if he did not settle the account. Mr. Penning questioned the amount of the alleged debt, pointing out that the original credit limit was somewhere around $500.00. Mr. Penning expressly stated that he dispute the alleged debt. Hearing that, the Elliott employee stated that she would note that Mr. Penning was disputing the alleged debt and abruptly terminated the conversation.

17. On July 21, 2010, Mr. Penning faxed a letter to Elliott, expressly stating that he

disputed the debt and refused to pay the debt.

18. On July 21, 2010, Elliott received by fax from Mr. Penning, a letter in which Mr. Penning expressly stated that he disputed the debt and refused to pay the debt.

19. The FDCPA state that a debt collector shall not communicate or threaten to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. 15 U.S.C. § 1692e(8).

20. After July 21, 2010, and before November 1, 2010, Elliott communicated credit information to PRA regarding the account and alleged debt.

21. After July 21, 2010, and before November 1, 2010, Elliott communicated to PRA that Mr. Penning disputed the alleged debt.

22. During that period of time between July 21, 2010 and before November 1, 2010, Elliott did not communicate to PRA that Mr. Penning disputed the alleged debt.

23. In November 2010, PRA communicated information to the consumer reporting agency, Equifax, credit information regarding Mr. Penning which PRA knew or should have known was false, including the failure to communicate that a disputed debt is disputed, and thereby violated the FDCPA, 15 U.S.C. § 1692e(8).

24. In November 2010, PRA communicated information to the consumer reporting agency, Experian, credit information regarding Mr. Penning which PRA knew or should have known was false, including the failure to communicate that a disputed debt is disputed, and thereby violated the FDCPA, 15 U.S.C. § 1692e(8).

25. In November 2010, PRA communicated information to the consumer reporting

agency, TransUnion, credit information regarding Mr. Penning which PRA knew or should have known was false, including the failure to communicate that a disputed debt is disputed, and thereby violated the FDCPA, 15 U.S.C. § 1692e(8).

26. The FDCPA states that if the consumer notifies the debt collector in writing within the thirty-day period described in 15 U.S.C. § 1692g(a) that the debt, or any portion thereof is disputed, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt, and a copy of such verification is mailed to the consumer by the debt collector. 15 U.S.C. § 1692g(b).

27. On July 21, 2010, and within the thirty-day period described in 15 U.S.C. § 1692g(a), Mr. Penning notified Elliott and PRA in writing that Mr. Penning disputed the debt.

28. Elliott has never mailed verification of the debt to Mr. Penning.

29. PRA has never mailed verification of the debt to Mr. Penning.

30. PRA and Elliott did not cease collection of the disputed debt. Instead, on October 27, 2010, Elliott on behalf of PRA filed a debt collection lawsuit against Mr. Penning in efforts to collect the disputed debt, Case No. 2010-GC-5651, State of Michigan 61st District Court. PRA violated the FDCPA and Michigan law by failing to cease its efforts to collect the disputed and unverified debt.

31. Credit reporting constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One,* 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf,* 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1331 (D.Utah 1997).

32. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute). The FDCPA allows the consumer to orally dispute a debt. *Brady v. The Credit Recovery Company, Inc.*, 160 F.3d 64 (1st Cir. 1998). The FDCPA does not limit the time period for disputing a debt. A consumer can always dispute a debt with a debt collector, regardless of the passage of time.

33. The acts and omissions of PRA and its employees done in connection with efforts to collect a debt from Mr. Penning were done intentionally and wilfully.

34. The acts and omissions of Elliott and its employees done on behalf of PRA and in connection with efforts to collect a debt from Mr. Penning were done intentionally and wilfully.

35. PRA and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

36. Elliott and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

37. As an actual and proximate result of the acts and omissions of PRA, its employees

and its agents, including Elliott and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which he should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

### Count 1– Fair Debt Collection Practices Act

38.    Plaintiff incorporates the foregoing paragraphs by reference.

39.    Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

- a)   Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;
- b)   Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;
- c)   Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and
- d)   Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

- a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

40. Plaintiff incorporates the foregoing paragraphs by reference.

41. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

   a) Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

   b) Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; and (ii) the legal rights of a creditor or debtor; and

   c) Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

   a) Actual damages pursuant to M.C.L. § 445.257(2);

   b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

   c) Statutory damages pursuant to M.C.L. § 445.257(2); and

   d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

### Count 3– Michigan Occupational Code

42. Plaintiff incorporates the foregoing paragraphs by reference.

43. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

   a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

    untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; and (ii) the legal rights of a creditor or debtor;

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d) Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: December 14, 2010

*/s/ Phillip C. Rogers*
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com